IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | PLAINTIFF |
| v. | Case No. 1:66-cv-1095 | |
| JUNCTION CITY SCHOOL DISTRICT NO. 75, *et al*. | | DEFENDANTS |
| ARKANSAS DEPARTMENT OF EDUCATION and ARKANSAS STATE BOARD OF EDUCATION | | INTERVENORS |

### ORDER

Before the Court is the Junction City School District's ("Junction City") Motion for Declaratory Judgment, or Alternatively, for Clarification of Previous Orders, or Alternatively, for Modification of Previous Orders. (ECF No. 2). The United States has filed a response to the motion. (ECF No. 20). The Arkansas Department of Education ("ADE") and the Arkansas State Board of Education ("SBE") have filed a response in opposition. (ECF No. 26). The Court finds the matter ripe for consideration.

### I. BACKGROUND

On February 7, 1966, Plaintiff United States of America ("United States") filed this action against Junction City, seeking to dismantle the district's operation of a dual school system. (*See* ECF No. 20-1). On June 21, 1966, the United States filed a Motion for Preliminary Injunction requesting that Junction City and other defendants be enjoined from continuing to assign students to particular schools because of their race; operating separate school buses for black and white students; segregating faculty and staff based on race; and maintaining any distinctions in the operation and management of Junction City based on race or color. (*See* ECF No. 20-2, p. 5). On

August 15, 1966, the Court granted the United States' Motion for Preliminary Injunction and issued an order enjoining Junction City from "maintaining and operating racially segregated public schools" and directing Junction City to eliminate its dual school system "with all deliberate speed." (ECF No. 20-3, p. 3). On September 8, 1966, Junction City responded by filing a "freedom-of-choice" desegregation plan to which the United States objected and proposed its own plan. (ECF No. 2-4). On November 29, 1966, the Court entered an order finding that neither proposed plan was acceptable and directing Defendants to "institute a good faith freedom of choice plan for desegregation of the 11th and 12th grades beginning in January 1967." (ECF No. 1, p. 3). The Court further ordered Junction City and other defendants to submit a report to the Court regarding its implementation of the freedom-of-choice plan. On August 14, 1967, the Court issued a decree requiring Junction City to implement a freedom-of-choice plan and setting forth the procedural framework for implementing the plan. (*See* ECF No. 20-4).

On May 24, 1968, the United States moved the Court for an order requiring the consolidation of the Junction City schools. After a hearing on the motion, the Court cancelled its decree dated August 14, 1967, and ordered Junction City to "propose an alternate plan for the conversion of the school system to a unitary system in accordance with the decisions of the Supreme Court made May 27, 1968, for all students in attendance." (ECF No. 2-1, p. 3). The Court allowed Junction City to begin operating schools in September 1968 under the freedom-of-choice plan until the district filed a consolidation plan in January 1969. (ECF No. 2-3). The Court then issued several orders directing Junction City to allow certain grades to attend school under the freedom-of-choice plan and further directing the district to consolidate all students in certain grades. (*See id.*; *see also* ECF No. 2-5 (assigning students grade 9-12 to Junction City High School and permitting students from other grades to attend either Junction City Elementary or Rosenwald

2

School)).

On October 23, 1970, the United States moved for further relief against Junction City on the grounds that Junction City failed to remedy its within-school segregation and its segregated transportation system. (ECF No. 2-6). On November 20, 1970, the Court entered an Order ("the 1970 Order") enjoining Defendants from "assigning students to, or maintaining any homeroom, classroom, or other school-related activity on the basis of race, color or national origin." (ECF No. 2-7). The Court's Order further directed Defendants to redraw their bus routes and reassign students to the buses on a non-racial basis. *Id*. Junction City has since been operating under the 1970 Order, which requires Junction City to comply with certain desegregations obligations.

In 1989, Arkansas enacted a school choice program. The Arkansas Public School Choice Act of 1989 (the "1989 Act") provided for a school choice program whereby a student could apply to attend a public school in a district that the student did not reside in, subject to certain limitations. The 1989 Act provided further that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and that "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern." (ECF No. 2-11, §§ 11(a-b)). Thus, the 1989 Act did not hinder Junction City's ongoing efforts to remove all vestiges of previous segregation because the statute allowed Junction City to reject segregative transfers in and out of the district.

In 2013, the Arkansas Public School Choice Act of 2013 (the "2013 Act") was enacted, expressly repealing the 1989 Act. The 2013 Act again allowed students to apply to attend a non-resident public school district. However, the 2013 Act did not contain the 1989 Act's limiting

3

language barring segregative inter-district transfers.[1] The 2013 Act allowed any school district to annually declare itself exempt from participating in school choice if said participation would conflict with the school district's obligations under a federal court's "desegregation plan regarding the effects of past racial segregation in student assignment" or a federal court order "remedying the effects of past racial segregation." (ECF No. 2-12, p. 11). Any school district that made this declaration would be exempt from participating in school choice for that school year.

In 2015, the Arkansas Public School Choice Act of 2015 (the "2015 Act") was enacted, thereby amending the 2013 Act. The 2015 Act, among other things, eliminated the school districts' ability to declare themselves exempt from participating in school choice due to a conflict with existing obligations under a federal court's desegregation plan or order. Instead, the 2015 Act required that a school district wishing to be exempt from participating in school choice must submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan with the [2015 Act.]" (ECF No. 2-13, p. 5). If the school district submitted proof of an order or plan to the ADE, the provisions of the order or plan would govern, thereby exempting the school district from participating in school choice.

In 2017, the Arkansas General Assembly passed Act 1066 of the Regular Session of 2017 (the "2017 Act"), thereby amending the 2015 Act. The 2017 Act, among other things, amended the 2015 Act's language allowing school districts to seek an exemption from participating in school choice. Under the 2017 Act, school districts seeking to be exempt from participation in school choice must now submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan *that explicitly*

---

[1] The term "segregative," as used throughout this Order, refers to a student transfer from a resident school district to a non-resident school district where the percentage of enrollment for the transferring student's race exceeds that percentage in the student's resident district.

*limits the transfer of students between school districts.*" (ECF No. 2-14, p. 2) (emphasis added). The ADE evaluates school districts' applications for an exemption from school choice and determines whether to grant an exemption. The SBE decides any appeals of the ADE's decisions regarding school choice exemption applications.

From 2013 through 2017, Junction City either declared itself exempt or applied for exemptions from participating in school choice pursuant to the school choice law in effect at the time. Each year, the ADE and SBE observed these declared conflicts with school choice and included Junction City on a public list of school districts not participating in school choice. Accordingly, Junction City did not participate in school choice at all while the 2013 Act and 2015 Act were in effect.

On December 27, 2017, Junction City applied for an exemption from participating in school choice under the 2017 Act for the 2018-2019 school year and submitted supporting documents to the ADE. On January 19, 2018, the ADE denied Junction City's request for an exemption, finding that Junction City failed to demonstrate that it was subject to a federal court's active desegregation order "explicitly limiting the <u>interdistrict</u> transfer of students." (ECF No. 2-19) (emphasis in original). The ADE found that documentation submitted by Junction City as proof of its conflict did not explicitly limit inter-district student transfers. Thus, the ADE concluded that Junction City would be required to participate in school choice for the 2018-2019 school year.

Junction City appealed the ADE's decision to the SBE. The SBE heard Junction City's appeal on March 8, 2018 and, in a subsequent order dated March 26, 2018, upheld the ADE's decision that Junction City would not receive an exemption and, therefore, must participate in school choice for the 2018-2019 school year. (ECF No. 2-22).

5

On May 14, 2018, Junction City filed the instant Motion for Declaratory Judgment, or Alternatively, for Clarification of Previous Orders, or Alternatively, for Modification of Previous Orders (hereinafter "Motion for Declaratory Judgment"). (ECF No. 2). In that motion, Junction City states that it is still subject to its desegregation obligations imposed by the Court's prior orders and that participation in school choice would have a segregative impact on Junction City, thereby causing it to violate the Court's previous orders. Accordingly, Junction City asserts that it has a conflict with taking part in school choice pursuant to the 2017 Act. Junction City seeks, by various alternative means, a finding that it is prohibited from taking part in school choice and/or a declaration that portions of the 2017 Act are unconstitutional.

On June 15, 2018, the Court issued an order certifying Junction City's constitutional challenge and sending notice to the Arkansas Attorney General's Office of the same, pursuant to Federal Rule of Civil Procedure 5.1(b). (ECF No. 5). On June 21, 2018, the ADE and SBE filed a motion to intervene in this case for the limited purpose of opposing Junction City's Motion for Declaratory Judgment. (ECF No. 13). On June 22, 2018, the Court held a status conference in which Junction City, the United States, and counsel from the Arkansas Attorney General's Office participated. On July 3, 2018, the United States filed its response to Junction City's Motion for Declaratory Judgment, posing no opposition to the motion. (ECF No. 20). On July 9, 2018, the Court granted the ADE and SBE's motion to intervene, thereby allowing those parties to intervene for the limited purpose of opposing Junction City's Motion for Declaratory Judgment. (ECF No. 21). On July 20, 2018, the ADE and SBE filed their response in opposition to Junction City's Motion for Declaratory Judgment. (ECF No. 26).

On August 1, 2018, the Court held an evidentiary hearing on Junction City's separate motion for preliminary injunctive relief. At the hearing, the parties offered evidence and witness

testimony, much of which is also relevant and applicable to the instant motion. On September 11, 2018, Junction City informed the Court that it did not desire an additional evidentiary hearing regarding the instant motion. (ECF No. 41). On September 21, 2018, the ADE and SBE informed the Court that they also did not desire an additional evidentiary hearing regarding the instant motion. (ECF No. 42). Accordingly, the Court finds the matter fully briefed and ripe for consideration.

## II. DISCUSSION

Junction City seeks a ruling that it is prohibited from taking part in school choice. Specifically, Junction City asks that the Court confirm its conflict with participating in school choice and declare void the SBE's March 26, 2018 order requiring that Junction City participate in school choice. Junction City asks the Court to do so through one of the following means: (1) modifying the Court's 1970 Order to prohibit segregative inter-district transfers in light of changes in Arkansas law, occurring with the 2013 repeal of the 1989 Act and the subsequent enactment of the 2017 Act; (2) clarifying that the Court's 1970 Order, as written, prohibits segregative inter-district transfers; (3) issuing a declaratory judgment confirming that Junction City has a conflict with participating in school choice because it remains subject to a federal court desegregation order and ordering the SBE to reverse its March 26, 2018 order requiring Junction City to participate in school choice; or (4) declaring that the 2017 Act is unconstitutional to the extent that it authorizes the ADE to determine whether or not a school district has a conflict with participating in school choice.

The Court will begin by addressing Junction City's request for modification of the Court's previous orders. If necessary, the Court will then address Junction City's requests for clarification of the Court's previous orders, for a declaratory judgment, and that portions of the 2017 Act be

declared unconstitutional.

**A. Modification of the Court's Orders**

Junction City asks that the Court modify the 1970 Order to prohibit segregative inter-district transfers in light of significant changes in Arkansas' school choice laws that were not contemplated by the Court or by the parties to this case during the litigation that resulted in the 1970 Order.

Federal Rule of Civil Procedure 60(b) authorizes modification of consent decrees and court orders.[2] *See Smith v. Bd. of Educ. of the Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 570 (8th Cir. 2014). "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree." *Id*. (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)); *id*. at 572 ("*Rufo* and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law."). Further, the Eighth Circuit has found that modification of consent decrees in school desegregation cases is permissible under certain circumstances. *See id.* (affirming a district court's modification of a consent decree in a school desegregation case).

"A party seeking modification of a consent decree 'must [first] establish that a significant change in facts or law warrants revision of the decree.'" *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist., No. 1*, 56 F.3d 904, 914 (8th Cir. 1995) (quoting *Rufo*, 502 U.S. at 393). If the movant carries this burden, the court "must then determine whether the proposed modification is suitably tailored to the changed circumstance." *Id*.

---

[2] Junction City's desegregation obligations are set forth in various Court orders and decrees. For these proceedings, the Court and parties focus on the 1970 Order. Although the 1970 Order is not technically a consent decree, it is similar to consent decrees entered in other desegregation cases, and the parties treat it as if it were a consent decree. Thus, the Court will do the same.

The Court must first determine whether a significant change in facts or law warrants modification of the 1970 Order. If the Court answers that question in the affirmative, it will then determine whether Junction City's proposed modification is suitably tailored to the changed circumstance.

**1. Significant Change in Facts or Law**

Junction City contends that the repeal of the 1989 Act and the passage of the 2013, 2015, and 2017 Acts qualifies as a significant change that warrants modification, arguing that the changes in the statutory framework now prevent Junction City from complying with its constitutional obligations to avoid taking any action with the natural and foreseeable consequence of causing segregative impact within Junction City. Junction City argues further that "[t]he State's shift from enacting laws that prohibited segregation and encouraged integrative transfers to advocating for school choice above all else, including desegregation efforts, is another important change in circumstance justifying modification." (ECF No. 3, p. 22).

The 1989 Act came into effect approximately nineteen years after the 1970 Order was entered. The 1989 Act included limitations stating that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern." (ECF No. 2-11, §§ 11(a-b)). The State of Arkansas subsequently repealed the 1989 Act and enacted the 2013 Act, which did not contain the 1989 Act's limiting language prohibiting segregative student transfers, and instead allowed school districts to declare themselves exempt from participating in school choice if participation would conflict with the school district's obligations under a court desegregation plan or order. Subsequent amendments to the school choice statutory framework further limited

9

school districts' ability to obtain an exemption from participating in school choice.

Under the current iteration of Arkansas' school choice law—the 2017 Act—a school that claims a conflict with participating in school choice must show that it is subject to an active and enforceable desegregation court order or plan that "explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Accordingly, for Junction City to receive an exemption from participating in school choice under the 2017 Act, it must show that it is subject to a desegregation order that explicitly bars "inter-district" student transfers.

As previously mentioned, a party seeking modification of a consent decree must show that significant changes in facts or law warrant revision of the decree. *Rufo*, 502 U.S. at 393. "Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Mays v. Bd. of Educ. of Hamburg Sch. Dist.*, 834 F.3d 910, 919 (8th Cir. 2016) (quoting *Rufo*, 502 U.S. at 385). However, changes in statutory law may warrant modification. *See Rufo*, 502 U.S. at 388 (noting that "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."). Modification may also be warranted when changed factual conditions make compliance with the decree substantially more onerous or when a decree proves to be unworkable because of unforeseen obstacles. *Id.* at 384.

Junction City states that modification is warranted because inter-district transfers, such as those contemplated by the 2013 Act, 2015 Act, and 2017 Act, did not exist when the 1970 Order was entered. Junction City argues that it is now unable to comply with its constitutional obligations because the school choice law currently in effect does not contain express limitations against segregative inter-district transfers and instead only affords exemptions from participating in school choice to school districts that can produce a court order explicitly prohibiting the transfer of

10

students between school districts.

The ADE and SBE argue in response that modification of the 1970 Order is not warranted in this instance.[3] Without citing to authority, the ADE and SBE argue that the repeal of the 1989 Act and the subsequent passage of the 2013, 2015, and 2017 Acts is not a significant change in circumstances that warrants revision of a consent decree. In a separate section of their brief, the ADE and SBE also argue that the Junction City desegregation orders do not specifically prohibit inter-district student transfers, but instead prohibit unconstitutional conduct occurring within Junction City. The ADE and SBE argue that the Court should not read "inter-district" language into the desegregation orders.

Upon consideration, the Court finds that the repeal of the 1989 Act and its subsequent replacement by the 2013, 2015, and 2017 Acts is a significant change in circumstances. The 1970 Order contains no language expressly prohibiting inter-district student transfers but instead enjoins Junction City from "assigning students to, or maintaining any homeroom, classroom, or other school-related activity on the basis of race, color or national origin." (ECF No. 2-7). The Court's Order further directed Defendants to redraw their bus routes and reassign students to the buses on a non-racial basis. *Id.* The Eighth Circuit has instructed that courts interpreting a consent decree:

> are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order . . . because a consent decree is a particular sort of legal instrument that cannot be read in a vacuum. It is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it.

---

[3] The Court notes that, although not asserted in the section responding to Junction City's request for modification, the ADE and SBE make the threshold argument that Junction City does not have standing to challenge the constitutionality of the 2017 Act or to request declaratory relief. To the extent that the ADE and SBE also intended to argue that Junction City does not have standing to request modification of the 1970 Order, the Court finds that argument unavailing. The Eighth Circuit has made clear in a desegregation context that school districts that are subject to a consent decree may seek modification of the consent decree. *See, e.g.*, *Smith*, 769 F.3d at 570. Accordingly, the Court finds that Junction City has standing to request modification of the consent decree entered into by Junction City in this case.

11

*United States v. Knote*, 29 F.3d 1297, 1300 (8th Cir. 1994) (internal quotation marks omitted). Although the 1970 Order does not expressly prohibit inter-district transfers, the Court finds that the 1970 Order clearly intended to prohibit *any* racial discrimination occurring within Junction City, including preventing student transfers which result in segregation of Junction City's student body. Moreover, it was unnecessary for the parties to draft the 1970 Order in a way that explicitly barred segregative inter-district student transfers because inter-district student transfers, such as those contemplated by the 2013 Act, 2015 Act, and 2017 Act, did not exist when the 1970 Order was entered.

Changes in statutory law may be significant changes in circumstances, and the Court finds that the repeal of the 1989 Act and the subsequent enactment of the 2017 Act is a significant change. *Rufo*, 502 U.S. at 388. Moreover, the Court finds that the 2017 Act's requirement that a school district's produced court order must explicitly bar inter-district transfers presents an unforeseen obstacle that causes the 1970 Order to be unworkable, as the parties drafted the 1970 Order at a time in which including that language was unnecessary. *Id.* at 384. From the time the 1970 Order was entered until 2017, Junction City was able to comply with its desegregation obligations. When Arkansas enacted a school choice program in 1989 and continuing through 2013, Junction City did not experience any segregative inter-district transfers because such transfers were prohibited by the existing statutory scheme. Even after the repeal of the 1989 Act and the subsequent enactment of the 2013 Act, Junction City did not experience any segregative inter-district transfers because it was able to declare itself exempt from participating in school choice. Junction City still did not experience any segregative inter-district transfers while the 2015 Act was in place because the ADE and SBE found that Junction City submitted sufficient evidence of a conflict, allowing Junction City to claim an exemption from participating in school choice.

However, the changes to the statutory framework brought about with the 2017 Act currently prevent Junction City from claiming an exemption from participating in school choice. Junction City is, for the first time since 1970, being required to allow students to make segregative inter-district transfers pursuant to school choice because the 1970 Order does not explicitly bar inter-district student transfers as now required by the 2017 Act. Therefore, the Court finds that Junction City's asserted change in circumstances satisfies its burden because changes in the governing school-choice statutory framework—and the ensuing requirements and limitations—have an actual effect on Junction City's ability to comply with the 1970 Order. Accordingly, the Court finds that Junction City has shown that a significant change in circumstances is present, justifying modification of the 1970 Order. The Court will now determine whether Junction City's proposed modification is suitably tailored to the changed circumstance.

### 2. Suitably Tailored Modification

Junction City asks the Court to modify the 1970 Order to reflect the changes in the governing school-choice statutory framework since the entry of the 1970 Order. Specifically, Junction City asks that the Court modify the decree to explicitly prohibit segregative inter-district transfers unless requested as otherwise provided by Arkansas law for educational or compassionate purposes and approved by the Junction City school board. (ECF No. 2, pp. 17-18).

The ADE and SBE argue that modification of the 1970 Order is not suitably tailored to the changed circumstances. The ADE and SBE argue that Junction City's proposed modification is an inter-district remedy, which is impermissible in this situation because the Court has not found an inter-district constitutional violation between Junction City and any of the school districts accepting student transfers from Junction City. The ADE and SBE also argue, without citing to supporting authority, that any modification would have to be based on Junction City's "implied

unitary status."

A movant seeking a modification of a consent decree must show that the proposed modification is suitably tailored to the changed circumstance. *Id.* at 391. To be "suitably tailored to the changed circumstance," a modification "must not create or perpetuate a constitutional violation," or "strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id.*

As an initial matter, the Court will take up the ADE and SBE's argument that any modification would have to be based on Junction City's "implied unitary status." Although the ADE and SBE do not explain this argument in the section of their brief opposing modification, they argue elsewhere in their response that the Court should not grant the instant motion because there is no evidence that Junction City has failed to reach unitary status or that it has failed to comply with the Court's desegregation orders since the 1970s. To the extent that the ADE and SBE intended to support their "implied unitary status" argument with this line of argument, the Court finds the argument unpersuasive because Junction City has not obtained unitary status.

It is well settled that a federal court supervising a school system in a desegregation case may order an incremental or partial withdrawal of its supervision and control after finding that the school system has achieved "unitary" status. *Freeman v. Pitts*, 503 U.S. 467, 489 (1992). No party to this case has ever asked the Court to determine whether Junction City has achieved unitary status, nor has the Court declared that Junction City has indeed achieved unitary status. The ADE and SBE cite no authority for the proposition that a school district may attain an "implied unitary status" over time by complying with its constitutional requirements, and the Court is unaware of any such authority. Thus, the Court finds unavailing the ADE and SBE's argument that the Court should deny the instant motion because of an implicitly attained unitary status, and the Court will

14

not address the argument further in this Order.

With that ancillary argument now addressed, the Court finds that Junction City's proposed modification is suitably tailored to the changed circumstances. The ADE and SBE's primary contention is that the Court should not modify the 1970 Order to expressly prohibit segregative inter-district student transfers because it would be an impermissible inter-district remedy in that this case originally concerned intra-district conduct attributable only to Junction City. The ADE and SBE argue that the Court has not found in this case that Junction City and another school district committed an inter-district constitutional violation and, thus, any remedy fashioned to address Junction City's conduct must be limited solely to Junction City. The ADE and SBE do not elaborate further on this point, nor do they cite authority supporting the proposition that modification of a consent decree under circumstances like this case is an inter-district remedy. However, the ADE and SBE argue in their response to a separate motion in this case that granting the relief Junction City seeks would effectively enjoin other school districts from accepting Junction City's transfer students by way of a modification to a court order entered in a case to which no other district was ever a party. (ECF No. 18, p. 23).

Assuming *arguendo* that the ADE and SBE's present argument is also based on this line of thinking, the Court finds the argument unpersuasive. The ADE and SBE correctly point out that an "interdistrict remedy is appropriate only upon a showing of a constitutional violation within one district that produces a significant segregative effect in another district." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 778 F.2d 404, 444 (8th Cir. 1985) (internal quotation marks omitted). The Supreme Court has interpreted this rule to mean that "district courts may not restructure or coerce local governments or their subdivisions." *Liddell v. State of Mo.*, 731 F.2d 1294, 1308 (8th Cir. 1984) (discussing *Hills v. Gautreaux*, 425 U.S. 284 (1976)). In other words,

15

absent proof of an inter-district violation, a court-imposed remedy exceeds its scope when it is "imposed upon governmental units that were neither involved in nor affected by the constitutional violation." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).

Upon consideration, the Court finds that Junction City's proposed modification would not constitute an inter-district remedy. Junction City asks the Court to modify the 1970 Order to prohibit Junction City from allowing segregative inter-district student transfers to other school districts. To be fair, this modification would indirectly prevent other school districts from receiving Junction City transfer students via school choice because Junction City would not be allowed to permit segregative inter-district transfers. However, the ADE and SBE cite no binding authority finding that a remedy like the modification Junction City seeks is an inter-district remedy, and the Court is unaware of any such authority.[4] Rather, the Eighth Circuit has found inter-district remedies where courts directly order action that directly impacts multiple school districts. *See, e.g.*, *Edgerson on Behalf of Edgerson v. Clinton*, 86 F.3d 833, 837 (8th Cir. 1996) (describing forced consolidation of school districts and imposing an inter-district magnet school plan as inter-district remedies); *Milliken I*, 418 U.S. at 754 (1974) (characterizing the creation of an inter-district student bussing plan as an inter-district remedy).

The modification would not directly restrict any other school district's ability to participate in school choice or to receive students from other school districts that are otherwise eligible to participate in school choice. The proposed modification would only prevent other school districts from receiving segregative transfer students from Junction City pursuant to school choice. This

---

[4] In *Milliken v. Bradley*, the case cited primarily by the ADE and SBE in support of their argument, the United States Supreme Court found an impermissible inter-district remedy where the federal district court forced multiple school districts to consolidate to remedy a condition of segregation found to exist in only one of the school districts. 418 U.S. 717, 744, 752 (1974). In the case at bar, Junction City does not ask the Court to force consolidation of it and any other school district.

16

minor intrusion into other school districts' abilities to receive Junction City transfer students does not directly impact those other school districts. Therefore, the Court finds that the modification sought by Junction City is not an impermissible inter-district remedy.

Junction City's proposed modification modifies the terms of the 1970 Order to include the necessary language required by the 2017 Act, thereby letting Junction City prohibit segregative inter-district transfers from Junction City to other school districts, which it was able to do until the enactment of the 2017 Act. Beginning with the 2019-2020 school year, the 1970 Order, as modified, would explicitly feature the newly added language required by the 2017 Act. Thus, the 1970 Order would constitute evidence of a "genuine conflict under an active desegregation order or active court-approved desegregation plan that explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Thus, moving forward, no students could undergo a segregative inter-district transfer from Junction City to another school district pursuant to the 2017 Act. The Court finds that this modification is suitably tailored to address the changed circumstance that occurred when the 1989 Act was repealed and subsequently replaced by the 2013 Act, the 2015 Act, and—most importantly—the 2017 Act.

The Court will not require that the students who transferred from Junction City to other school districts pursuant to school choice for the 2018-2019 school year return to Junction City. At the time those students transferred, the 1970 Order did not contain the necessary language contemplated by the 2017 Act for Junction City to claim an exemption from school choice. For this same reason, the Court will not void the SBE's March 26, 2018 order requiring Junction City to participate in school choice for the 2018-2019 school year. At the time the SBE's March 26, 2018 order was entered, the 1970 Order did not feature the necessary language contemplated by the 2017 Act for Junction City to attain an exemption from school choice. The modified 1970

Order shall have prospective effect, allowing Junction City to claim an exemption from school choice beginning with the 2019-2020 school year.

### 3. Conclusion

The Court has determined that "a significant change in facts or law warrants revision of the [1970 Order.]" *Little Rock Sch. Dist.*, 56 F.3d at 914. The Court has also determined that "the proposed modification is suitably tailored to the changed circumstance." *Id.* Accordingly, the Court shall modify the 1970 Order in accordance with Junction City's proposed modification.

### B. Other Requested Forms of Relief

Junction City also requested that the Court grant it relief via other alternative methods. However, in light of the Court's above finding that modification of the 1970 Order is warranted, the Court finds it unnecessary to address the parties' arguments regarding the other forms of relief sought.

### III. CONCLUSION

For the above-discussed reasons, the Court finds that Junction City's motion (ECF No. 2) should be and hereby is **GRANTED** to the extent that it requests modification of the 1970 Order. Accordingly, the 1970 Order (ECF No. 2-7) is hereby **MODIFIED** to explicitly prohibit the segregative inter-district transfer of students from Junction City to other school districts, unless such a transfer is requested for education or compassionate purposes and is approved by Junction City's school board on a case-by-case basis. Junction City's motion (ECF No. 2) is **DENIED AS MOOT** as to the remainder of Junction City's alternative requests for relief.

**IT IS SO ORDERED**, this 17th day of January, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge