IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                       Case No. 1:66-cv-1095

JUNCTION CITY SCHOOL
DISTRICT NO. 75, *et al*.                                            DEFENDANTS

ARKANSAS DEPARTMENT OF EDUCATION and
ARKANSAS STATE BOARD OF EDUCATION                                    INTERVENORS

## ORDER

Before the Court is the Motion for Stay Pending Appeal and to Expedite (ECF No. 50)

filed by Intervenors Arkansas Department of Education and Arkansas State Board of Education.

("ADE and SBE").  Defendant Junction City School District ("Junction City") has responded.

(ECF No. 54).  The Court finds the matter ripe for consideration.

## I. BACKGROUND

On January 17, 2019, the Court entered an order (the "modification order") modifying a

desegregation order ("the 1970 Order") that applies to Junction City to explicitly prohibit the

segregative interdistrict transfer of students from Junction City to other school districts, unless

such a transfer is requested for education or compassionate purposes and is approved by Junction

City's school board on a case-by-case basis.[1]  (ECF No. 47).  On February 15, 2019, the ADE and

SBE filed a notice of appeal as to the modification order.  That same day, the ADE and SBE filed

the instant motion, asking the Court to issue a stay of the modification order pending the outcome

of the appeal and asking the Court to shorten the other parties' time to respond to the instant

---

[1] The Court's modification order recounted in depth the factual and procedural underpinnings of the present dispute.
(ECF No. 47, pp. 1-7).  For brevity's sake, the Court will not repeat that background in this order.

motion. On February 20, 2019, the Court denied the ADE and SBE's request to shorten the other parties' response time. (ECF No. 52.) On March 1, 2019, Junction City filed a response opposing the instant motion. (ECF No. 54).

For the reasons discussed below, the Court finds that the ADE and SBE have not met their burden to receive a temporary administrative stay of the modification order or a full stay pending the appeal of the modification order.

## II. DISCUSSION

In deciding whether to grant a motion to stay an order pending appeal, the Court considers the following four factors: (1) the likelihood of the movant's success on the merits of the appeal; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay would substantially injure the non-moving party; and (4) where the public interest lies.[2] *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Courts must consider the relative strength of the four factors, balancing them all, with the most important factor being the likelihood of success on appeal. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). As the moving parties, the ADE and SBE bear the burden of proving that the weight of the four factors warrant a stay. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam). With this standard in mind, the Court will now address each of the four factors as they relate to the instant motion for a stay pending appeal.

### A. Likelihood of Success on the Merits

The first factor asks whether the moving party is likely to succeed on appeal. *Hilton*, 481 U.S. at 776. The moving party need not establish an absolute certainty of success. *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 423 (8th Cir. 1996).

---

[2] These four factors are the same factors used to determine whether to grant a preliminary injunction. *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992).

The modification order found that modification of the 1970 Order was proper because a significant change in law warranted revision of the order and because the proposed modification was suitably tailored to the changed circumstance. In the present motion, the ADE and SBE advance three arguments as to why the Court's ruling is likely to be reversed on appeal: (1) that no significant change in law occurred to warrant modification and that the Court misinterpreted the 1970 Order, (2) that the modification was not suitably tailored because it imposed an impermissible interdistrict remedy, and (3) the modification order unlawfully violates students' equal protection rights. The Court will separately address each of these arguments.

### 1. Significant Change in Facts or Law

The ADE and SBE's first argument is that the changes to the relevant Arkansas school choice statutes was not a significant change in law justifying modification because the 1970 Order did not explicitly concern the interdistrict transfer of students from Junction City to elsewhere. Specifically, the ADE and SBE argue that the relevant statutory changes were not significant changes in law because Junction City did not show that the law had an actual effect on the 1970 Order, thereby making it unworkable. This argument is repetitive of an argument that the ADE and SBE previously made in the underlying briefing that gave way to the Court's modification order, and that the Court expressly considered and rejected. Without restating the entire modification order, the Court found[3] that "changes in the governing school-choice statutory framework—and the ensuing requirements and limitations—have an actual effect on Junction City's ability to comply with the 1970 Order." (ECF No. 47, p. 13). The Court reasoned that the 2017 Act requires that, for Junction City to receive an exemption from school choice, the 1970

---

[3] Throughout their motion, the ADE and SBE assert on multiple occasions that the Court "argue[ed]" various findings made in the modification order. (ECF No. 51, pp. 4, 10). This characterization is mistaken, however, because the Court is not a party to this case and does not make arguments but, rather, makes findings and rulings.

Order must contain specific restrictive language that was not required from the time the 1970 Order was entered up until the 2017 Act was put into effect. Thus, the 2017 Act prevents Junction City from claiming an exemption from participating in school choice, thereby presenting a change in law that justified modification of the order.

The ADE and SBE also argue that the Court misinterpreted the 1970 Order. They argue that this case and the 1970 Order have nothing to do with the interdistrict transfer of students, and the parties involved and the Court itself did not believe that the 1970 Order encompassed that subject. Thus, they argue that the Court erred by looking beyond the four corners of the 1970 Order and finding that the intent of the 1970 Order was to prohibit student transfers which result in the segregation of Junction City's student body.

The Court's modification order considered and rejected this argument, finding that the 1970 Order "clearly intended to prohibit *any* racial discrimination occurring within Junction City, including preventing student transfers which result in segregation of Junction City's student body." (ECF No. 47, p. 12). In reaching this conclusion, the Court was mindful of the Eighth Circuit's instruction that courts interpreting a consent decree "are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order." *United States v. Knote*, 29 F.3d 1297, 1300 (8th Cir. 1994). Although the Court noted that the 1970 Order did not expressly prohibit the interdistrict transfer of students, the Court also considered the context in which the parties were operating and the circumstances surrounding the order, thereby finding that it was unnecessary for 1970 Order to be drafted "in a way that explicitly barred segregative inter-district student transfers because inter-district student transfers, such as those contemplated by the 2013 Act, 2015 Act, and 2017 Act, did not exist when the 1970 Order was entered." (ECF No. 47, p. 12). Thus, the Court did not misconstrue the 1970 Order, but rather interpreted it by looking to

its content and language and by properly considering the context and circumstances in which it was entered.[4]

For the above reasons and for the reasons stated in the modification order, the Court finds that the ADE and SBE are unlikely to succeed on appeal with arguments that the Court previously considered and rejected. *Cf. St. Jude Med., Inc. v. Access Closure, Inc.*, No. 4:08-cv-4101-HFB, 2012 WL 12919351, at *1 (W.D. Ark. Oct. 2, 2012) ("[I]f the Court thought [the movant's] position was likely to succeed on appeal, the Court would not have decided against [the movant] in the first place."). The ADE and SBE have presented no additional argument or on-point caselaw to cause the Court to reverse course from its prior ruling. Thus, the Court finds that they are unlikely to succeed on appeal with these arguments.

### 2. Interdistrict Remedy

The ADE and SBE further argue that the modification order imposes an impermissible "interdistrict remedy," and is, therefore, not suitably tailored to the changed circumstances outlined by the Court. The ADE and SBE assert that the claimed interdistrict remedy is inappropriate because the 1970 Order only concerned alleged intradistrict violations. This line of argument was addressed and found unpersuasive in the modification order. (ECF No. 47, p. 15). Specifically, the Court observed that the modification would not directly restrict any other school district's actions. That being said, the Court noted that the modification would have an indirect impact on other school districts in that they would be unable to receive Junction City students via school choice transfers because Junction City would be barred from granting segregative interdistrict

---

[4] The Court further notes that the ADE and SBE were not parties to this case until allowed to recently intervene. In both their underlying brief and in the instant motion, the ADE and SBE assert that the parties and the Court did not intend for the 1970 Order to encompass interdistrict student transfers because the case did not concern that and because the order did not contain that specific language. However, the ADE and SBE provide no evidence of the intent of the original parties or the Court when the 1970 Order was entered. Accordingly, the Court finds that any assertion by the ADE and SBE as to the Court's or the original parties' intent is purely speculative and unsupported by any evidence in the record. Thus, the Court finds any such assertion unpersuasive.

transfers. However, the Court stated that the ADE and SBE had cited no binding authority finding that a remedy like the modification constituted an interdistrict remedy and that the Court was unaware of any such authority.[5] The Court further noted instances in which courts had found that the remedy implemented was interdistrict, such as forced consolidation of school districts, imposition of an interdistrict magnet school plan, and creation of an interdistrict student bussing plan.[6] (ECF No. 47, p. 16).

The ADE and SBE now attempt to re-litigate this issue. To the extent that the ADE and SBE present the same or substantially similar arguments as previously addressed by the modification order, the Court again finds those arguments unpersuasive. The ADE and SBE, however, do present one new, though similar, argument that was not raised in the briefing of the underlying motion. Specifically, the ADE and SBE assert that the granted modification is impermissible because it had an "interdistrict purpose," arguing that a remedy that has an interdistrict purpose "is impermissible in cases with no interdistrict violation." (ECF No. 51, pp. 11-12). The ADE and SBE state that:

> The Court's Modification Order undoubtedly has such an "interdistrict purpose." Indeed, its express purpose is to affect the racial demographics of Junction City relative to the surrounding districts. Because the Modification Order's purpose is to affect the racial makeup of Junction City relative to the surrounding schools by

---

[5] The ADE and SBE take issue with this aspect of the Court's finding that the modification was not an interdistrict remedy. They state that, "more importantly" than the fact that the Court was unaware of any binding authority establishing that a remedy like the modification constitutes an interdistrict remedy, the "Court did not cite any case (and [the ADE and SBE have] not located any case) modifying a decades-old consent decree that has nothing to do with interdistrict student transfers to prohibit interdistrict transfers based solely on a student's race." (ECF No. 51, p. 10, n.2). The ADE and SBE appear to take the position that it is the Court's burden to find supporting authority for the parties' arguments and positions. This, of course, is not the case. It is the responsibility of any party presenting their position to adequately support that position and establish that they are entitled to the relief sought.

[6] The ADE and SBE appear to misrepresent this portion of the modification order. Specifically, the ADE and SBE assert that the modification order found "that *only* 'remedies where courts directly order action that directly impacts multiple school districts' . . . constitute an interdistrict remedy." (ECF No. 51, p. 10) (emphasis added). The Court made no such finding. Instead, the Court merely noted various remedies that courts have found to be interdistrict in nature, stating that "the Eighth Circuit has found inter-district remedies where courts order action that directly impacts multiple school districts." (ECF No. 47, p. 16). This observation was obviously not meant to be exhaustive, but simply served to identify examples of specific remedies that had been found to be interdistrict.

preventing student transfers, it is an impermissible interdistrict remedy and will likely be reversed on appeal.

(ECF No. 51, p. 12).

Upon consideration, the Court finds this argument unpersuasive.  Indeed, the ADE and SBE's argument as to this issue is largely conclusory, simply asserting that the modification order has an interdistrict purpose without clearly explaining how they came to that conclusion. Notwithstanding the ADE and SBE's assertions otherwise, the modification order does not have an interdistrict purpose.  The purpose of the modification is, in short, to ensure that Junction City can comply with its desegregation obligations under the 1970 Order in light of recent statutory changes in the Arkansas Code.  The modification is not meant to affect the racial demographics of any school district around Junction City and does not seek to "affect the racial demographics of Junction City relative to the surrounding districts" as argued by the ADE and SBE.  Likewise, the modification order does not impose any duties or requirements on the surrounding school districts. Accordingly, the Court finds that it is unlikely that the ADE and SBE will prevail on this point on appeal because the remedy imposed is not an interdistrict remedy.

### 3. Equal Protection Violation

The ADE and SBE also argue that the Court's modification order unlawfully violates students' equal protection rights because it requires Junction City to deny students' interdistrict transfer requests based solely on their race.  The ADE and SBE argue further that the modification order resembles the requirements of the 1989 Act, which was declared unconstitutional.  The ADE and SBE assert that the modification order will likely be reversed on appeal because it applies without regard to whether a resident or non-resident school district has a history of *de jure* or *de facto* segregation.  Junction City argues in response that the United States Supreme Court has instructed that courts "may constitutionally employ racial classification essential to remedy

7

unlawful treatment of racial or ethnic groups subject to discrimination." (ECF No.55, p. 27). Junction City asserts that the Court's modification order is unlikely to be reversed on appeal because it comports squarely with this statement of law, as the parties to this case sought to rectify past practices of racial discrimination at Junction City.

Generally, the Eighth Circuit "will not consider an argument raised for the first time on appeal." *United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016). However, the Eighth Circuit has addressed new arguments raised on appeal where the new issue is encompassed in a more general argument previously raised and where no new evidence is necessary. *Id.* The Eighth Circuit also may consider a newly raised argument if a manifest injustice would otherwise result. *Id.*; *Von Kerssenbrock-Praschma v. Saunders*, 121 F.3d 373, 376 (8th Cir. 1997) ("[T]here are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result.").

Despite having the opportunity to do so, the ADE and SBE did not argue in their underlying brief that modification of the 1970 Order would improperly deny equal protection to students at Junction City. Although the words "equal protection" appear in the ADE and SBE's underlying brief on numerous occasions, they are presented only in the context of arguing that Junction City failed to argue or demonstrate that the 2017 Act is unconstitutional or that the 2017 Act otherwise violates Junction City students' equal protection rights. The ADE and SBE state nothing in their underlying brief that could be remotely construed as an argument that Junction City's proposed modification of the 1970 Order should be rejected because it would deny equal protection to students. The only reasons argued against modification by the ADE and SBE in their underlying

brief were that no significant change in fact or law warranted modification and that the proposed modification was an impermissible interdistrict remedy. (ECF No. 26, pp. 31-33).

As such, the Court finds that the ADE and SBE's equal-protection argument will be newly raised on appeal for the first time. As just discussed, this newly raised argument is not encompassed in any more general argument previously made by the ADE and SBE in their underlying brief. The ADE and SBE do not discuss the newly raised status of the argument, nor do they argue that any circumstances exist upon which the Eighth Circuit might choose to consider the newly raised argument. Moreover, the arguments advanced by the ADE and SBE and by Junction City on this issue demonstrate to the Court that this newly raised issue is not one "where the proper resolution is beyond any doubt." *Saunders*, 121 F.3d at 376.

The Court finds that the Eighth Circuit is unlikely to consider the ADE and SBE's newly raised equal-protection argument. Thus, the Court finds no reason to address the merits of the argument because the ADE and SBE are unlikely to succeed on appeal with a newly raised argument that is not encompassed by any more general argument previously raised. *See Pub. Water Supply Dist. No. 3 of Laclede Cnty., Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 524 (8th Cir. 2010) (noting the Eighth Circuit's "well-established rule . . . that '[a]bsent exceptional circumstances, we cannot consider issues not raised in the district court'").

### 4. Conclusion

For the aforementioned reasons, the Court finds that the ADE and SBE have not demonstrated that they are likely to succeed on the merits of their appeal. Accordingly, this factor weighs against granting the requested stay.

**B. Irreparable Harm to Movant Absent a Stay**

The ADE and SBE argue that both the State of Arkansas and numerous Arkansans will be irreparably harmed without a stay.

A party moving for a stay pending appeal must show that it will be irreparably harmed if a stay is not entered. *Hilton*, 481 U.S. at 776. To demonstrate "irreparable harm," a party must show that the harm is certain, great, and of such imminence that there is a clear and present need for equitable relief. *Iowa Utils. Bd.*, 109 F.3d at 425. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The failure to demonstrate irreparable harm is an independently sufficient ground to deny a stay. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

The ADE and SBE first argue that states suffer irreparable harm when they are prevented from enforcing state law and that the Court's modification order "effectively enjoins" the State of Arkansas from enforcing its current school choice law. In response, Junction City states that the state law presently at issue—the 2017 Act—explicitly recognizes the right of a school district subject to a valid court order to request and receive an exemption from participating in school choice. Junction City argues that, following the ADE and SBE's logic, "federal courts would be powerless to grant relief in the face of a claim that a given state statute or policy denies individuals their 'constitutional right . . . to attend a unitary school system.'" (ECF No. 55, p. 17).

The Court disagrees that the ADE and SBE would suffer irreparable harm without a stay. Despite the ADE and SBE's conclusory assertion that the modification order "effectively enjoins" the State of Arkansas from enforcing its school choice law, the Court took no such action. The Court's modification order is not "an order [that] has the 'practical effect' of granting or denying

10

an injunction . . . [that] should be treated as such." *Abbott v. Perez*, ___ U.S. ___, 138 S. Ct. 2305, 2319 (2018). The modification order granted no injunctive relief at all, but merely modified an existing order to satisfy the newly added requirements of the 2017 Act so that the parties subject to the 1970 Order could continue fulfilling their obligations under it. Moreover, the modification order took no action as to the 2017 Act, which is still in force and applicable to a vast majority of Arkansas public school districts. The modification order has had no impact on the State of Arkansas' ability to enforce its duly enacted school choice law, and Arkansas is indeed free to continue doing so. Thus, the modification order cannot be said to have enjoined—effectively or otherwise—the State of Arkansas from enforcing its school choice law.

The ADE and SBE also argue that parents—who, but for the modification order, would have utilized school choice to transfer their children from Junction City to another school district— will suffer irreparable harm absent a stay. As an initial matter, the Court believes that this argument is meritless and should not be considered because parents of Junction City students are neither parties to this case, nor have they brought the instant motion for a stay. Governing caselaw instructs that the "irreparable harm" factor concerns whether the "[stay] applicant" will suffer irreparable harm absent a stay, *see Hilton*, 481 U.S. at 776, and the ADE and SBE are the only entities presently moving for a stay. Accordingly, the Court finds that it cannot consider harm claimed by individuals or entities other than the ADE and SBE for this analysis. However, even assuming *arguendo* that claimed irreparable harm to non-party, non-applicant parents is a proper consideration, the Court finds that the claimed harm is insufficient to satisfy the "irreparable harm" factor.

In support of their position, the ADE and SBE offer an affidavit from one parent of students who currently reside within the Junction City School District, although those students have never

attended school in the Junction City School District.[7] ECF No. 50-5. That parent asserts that she does not believe her children would receive a quality education if they attended Junction City. She further attests that if her children are required to attend Junction City, her family "may consider private school."

The ADE and SBE argue that, absent a stay, parents will be irreparably harmed because they will not be able to utilize school choice for the upcoming school year. The ADE and SBE argue that this harm is not speculative, but the Court disagrees. The reasons offered—by the state on behalf of parents and by one specific parent—for desiring a transfer are in fact speculative, as they are based solely on the belief that a student will suffer academically unless allowed to transfer to another school district. However, there is nothing to indicate that any particular student's circumstances would indeed change if allowed to transfer to another school district or that the student or parent would suffer irreparable harm otherwise. Thus, the Court finds that these speculative harms are insufficient to show irreparable harm. *See S.J.W. v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) (rejecting speculative harm in an irreparable-harm analysis).

Moreover, and perhaps most important of all, the modification order does not deprive parents of the ability to transfer their children from Junction City to another school district. Even without the option of school choice, parents may transfer their children from Junction City by moving their residence within the desired school district, by seeking and obtaining approval from Junction City's school board for a transfer based on education or compassionate purposes, or by

---

[7] The ADE and SBE, likewise, reference testimony given in an earlier preliminary injunction hearing by a parent of a student who resides within the Junction City School District. In her testimony, the parent described why she did not want to send her child to Junction City, citing concerns about the quality of education provided by Junction City. However, her child was subsequently able to transfer out of the Junction City School District and is now being educated at a different school. There is no indication or allegation that this student is going to be sent back to Junction City in light of the modification order. Accordingly, it appears that regardless of how this matter proceeds, this parent and her child could not be harmed, as the child is now attending school outside Junction City.

12

placing their child in a private school or in homeschool. Even assuming *arguendo* that parents would suffer some degree of harm from an inability to use school choice for the upcoming school year, this harm would not be irreparable because other transfer mechanisms are currently available for use. Accordingly, the Court finds that, to the extent that claimed harm to parents is a proper consideration, it is insufficient to demonstrate irreparable harm absent a stay of the Court's modification order pending appeal.

In sum, the Court finds that the ADE and SBE have failed to show that they would be irreparably harmed absent a stay of the modification order pending appeal. Accordingly, the Court finds that this factor weighs against granting the requested stay. Moreover, as previously noted, a movant's failure to show irreparable harm is an independent basis upon which to deny a motion for a stay, and the Court finds accordingly that the instant motion should be denied for that reason. *Watkins Inc.*, 346 F.3d at 844; *Brady*, 640 F.3d at 794 (Bye, J., dissenting). However, the Court will nonetheless complete its analysis and address the remaining factors.

**C. Harm to Non-Moving Party**

The third factor asks whether the non-moving party would be substantially harmed if a stay is entered. *Hilton*, 481 U.S. at 776.

The ADE and SBE argue that Junction City will suffer no harm if a stay is issued for the pendency of the appeal. The ADE and SBE state that, on August 8, 2018, the Court denied Junction City's motion for preliminary injunctive relief in this case after finding that Junction City failed to demonstrate that it would suffer irreparable harm absent an injunction. The ADE and SBE argue that Junction City's situation has not changed and, thus, Junction City cannot show that it would suffer irreparable harm now if a stay is granted.

13

Junction City argues in response that it would suffer irreparable harm if a stay is entered. Junction City notes that the Court's August 8, 2018 denial of preliminary injunctive relief noted that Junction City being compelled to violate the 1970 Order by participating in school choice "could constitute harm in certain circumstances . . . [but] this notion is predicated on the idea that the Court will eventually grant Junction City's Motion for Declaratory Relief." (ECF No. 38, p. 8). Junction City argues that the Court has since granted its motion for declaratory relief and modified the 1970 Order. Thus, Junction City argues that granting a stay of the modification order "would pose a cognizable danger of future violation that would be more than a mere possibility." (ECF No. 55, p. 21) (internal quotation marks omitted).

Upon consideration, the Court finds that Junction City would suffer substantial harm with a stay. Junction City correctly notes that, in denying Junction City's prior motion for preliminary injunctive relief, the Court opined that Junction City's argument that it would suffer irreparable harm if forced to participate in school choice hinged on the speculative notion that its underlying relief would be granted. The modification order granted Junction City's underlying request for relief, finding that modification of the 1970 Order was proper because the 2017 Act presented an unforeseeable change in law that made the 1970 Order unworkable. If the Court were to reverse course now and stay its ruling, Junction City would suffer substantial harm by being required to participate in school choice, thereby violating the terms of the 1970 Order by allowing interdistrict student transfers to a non-resident school district where the percentage of enrollment for the transferring student's race exceeds that percentage in the student's resident district.[8] Accordingly, the Court finds that this factor weighs slightly against granting the requested stay.

---

[8] The Court makes no finding as to whether the harm Junction City would suffer with a stay is irreparable. The relevant *Hilton* factor asks only if the non-moving party would be "substantially harmed" with a stay. *Hilton*, 481 U.S. at 776.

**D. Public Interest**

The fourth factor asks whether a stay pending appeal lies within the public interest. *Hilton*, 481 U.S. at 776.

The ADE and SBE argue that the public interest favors allowing the State of Arkansas to enforce its school choice law and allowing parents to continue to place their children in the schools that best meet their needs. Junction City argues in response that the public interest favors preserving the constitutional right of students to attend a desegregated school.

The public certainly has an interest in seeing that duly enacted laws are carried out. *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977); *Waters v. Ricketts*, 48 F. Supp. 3d 1271, 1279 (D. Neb. 2015), *aff'd*, 798 F.3d 682 (8th Cir. 2015). However, the protection of constitutionally protected rights necessarily serves the public interest. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) ("[I]t is always in the public interest to protect constitutional rights."), *overruled on other grounds*, *Phelps-Roper v. City of Manchester*, *Mo.*, 697 F.3d 678 (8th Cir. 2012). Students have a constitutional right to attend a desegregated public school. *See Jackson v. Marvell Sch. Dist. No. 22*, 389 F.2d 740, 746 (8th Cir. 1968); *Cato v. Parham*, 297 F. Supp. 403, 410 (E.D. Ark. 1969) (noting students' constitutional right to be educated in racially non-discriminatory schools). Thus, the Court finds that the public's interest in seeing the enforcement of its duly enacted laws is secondary to the public's interest in protecting students' constitutional right to attend desegregated public schools. Accordingly, this factor weighs against granting the requested stay.

**E. Conclusion**

As discussed above, the Court finds that the balance of the *Hilton* factors, viewed in their totality, weigh against granting the ADE and SBE's requested stay. Accordingly, the Court concludes that the instant motion should be denied.

### III. CONCLUSION

For the aforementioned reasons, the Court finds that the ADE and SBE's motion for a stay of the modification order pending appeal (ECF No. 50) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 8th day of March, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge