IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | PLAINTIFF |
| v. | Case No. 1:66-cv-1095 | |
| JUNCTION CITY SCHOOL DISTRICT NO. 75, *et al*. | | DEFENDANTS |
| ARKANSAS DEPARTMENT OF EDUCATION and ARKANSAS STATE BOARD OF EDUCATION | | INTERVENORS |
| LOVE, *et al*. | | PLAINTIFFS |
| v. | Case No. 1:70-cv-0051 | |
| JUNCTION CITY SCHOOL DISTRICT NO. 75, *et al*. | | DEFENDANTS |

**ORDER**

Before the Court is Defendant Junction City School District No. 75's ("Junction City") Unopposed Motion for Declaration of Unitary Status. ECF No. 68. Plaintiff United States of America ("United States") responded in support of the instant motion. ECF No. 70. No other party has responded in opposition, and the time to do so has passed. *See* Local Rule 7.2(b). The Court finds the matter ripe for consideration. For the reasons discussed below, the Court finds that Junction City's request for unitary status should be granted.

**I. BACKGROUND**

On February 7, 1966, the United States filed this action against Junction City, seeking to dismantle the district's operation of a dual school system. ECF No. 20-1. On June 21, 1966, the United States filed a Motion for Preliminary Injunction requesting that Junction City and other defendants be enjoined from continuing to assign students to particular schools because of their

race; operating separate school buses for black and white students; segregating faculty and staff based on race; and maintaining any distinctions in the operation and management of Junction City based on race or color. ECF No. 20-2, p. 5. On August 15, 1966, the Court granted the United States' Motion for Preliminary Injunction and issued an order enjoining Junction City from "maintaining and operating racially segregated public schools" and directing Junction City to eliminate its dual school system "with all deliberate speed." ECF No. 20-3, p. 3. On September 8, 1966, Junction City responded by filing a "freedom-of-choice" desegregation plan to which the United States objected and proposed its own plan. ECF No. 2-4. On November 29, 1966, the Court entered an order finding that neither proposed plan was acceptable and directing Defendants to "institute a good faith freedom of choice plan for desegregation of the 11th and 12th grades beginning in January 1967." ECF No. 1, p. 3. The Court further ordered Junction City and other defendants to submit a report to the Court regarding its implementation of the freedom-of-choice plan. On August 14, 1967, the Court issued a decree requiring Junction City to implement a freedom-of-choice plan and setting forth the procedural framework for implementing the plan. ECF No. 20-4.

On May 24, 1968, the United States moved the Court for an order requiring the consolidation of the Junction City schools. After a hearing on the motion, the Court cancelled its decree dated August 14, 1967, and ordered Junction City to "propose an alternate plan for the conversion of the school system to a unitary system in accordance with the decisions of the Supreme Court made May 27, 1968, for all students in attendance." ECF No. 2-1, p. 3. The Court allowed Junction City to begin operating schools in September 1968 under the freedom-of-choice plan until the district filed a consolidation plan in January 1969. ECF No. 2-3. The Court then issued several orders directing Junction City to allow certain grades to attend school under the

freedom-of-choice plan and further directing the district to consolidate all students in certain grades. *Id*.; *see also* ECF No. 2-5 (assigning students grade 9-12 to Junction City High School and permitting students from other grades to attend either Junction City Elementary or Rosenwald School).

On October 23, 1970, the United States moved for further relief against Junction City on the grounds that Junction City failed to remedy its within-school segregation and its segregated transportation system. ECF No. 2-6. On November 20, 1970, the Court entered an Order ("the 1970 Order")[1] enjoining Defendants from "assigning students to, or maintaining any homeroom, classroom, or other school-related activity on the basis of race, color or national origin." ECF No. 2-7. The Court's Order further directed Defendants to redraw their bus routes and reassign students to the buses on a non-racial basis. *Id*. Junction City has since been operating under the 1970 Order, which requires Junction City to comply with certain desegregation obligations.

Junction City was also sued in the other desegregation case captioned above, *Love, et al. v. Bd. of Ed. of Junction City School District No. 75, et al.*, Case No. ED-70-C-51, U.S. Dist. Ct., W.D. Ark. Brought by Black parents in 1970 alleging that the JCSC engaged in discriminatory practices, the *Love* case was eventually dismissed by an order dated May 17, 1974, with the Court retaining jurisdiction to resolve future issues that may arise under "either of the two proceedings." ECF No. 2-8.

In the instant motion, Junction City argues that it has fully complied with the 1970 Order and seeks a declaration of unitary status and dissolution of the 1970 Order. Junction City states that the United States and the Plaintiffs in *Love* have been contacted regarding the request and do

---

[1] Junction City's desegregation obligations are set forth in various Court orders and decrees. For these proceedings, the Court focuses on the 1970 Order. Although the 1970 Order is not technically a consent decree, it is similar to consent decrees entered in other desegregation cases, and the parties treat it as if it were a consent decree. Thus, the Court will do the same.

not oppose dissolution of the consent decree.  The United States' response to Junction City's request states that "[b]ased on the information reviewed, the United States does not oppose . . . [Junction City]'s Motion."  ECF No. 70.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting Fed. R. Civ. P. 60(b)(5)).  "From the very first, federal supervision of local school systems was intended as a temporary measure to remedy past discrimination." *Bd. Of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 247 (1991).  The necessary transition away from segregated schools inherently recognizes that there may come a time when a school district's compliance with a desegregation decree would permit dissolution of that decree.  *See id*. at 248 (citation omitted); *and see Freeman v. Pitts*, 503 U.S. 467, 486 (1992) (noting that a district court's remedial control over a school district can eventually be withdrawn upon achievement of unitary status). "[T]he longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes." *Horne*, 557 U.S. at 453.  Courts may "relinquish continuing jurisdiction to ensure compliance with a desegregation consent decree when the moving party has demonstrated full compliance." *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 572 (8th Cir. 2014).

The first step in evaluating a request to change or dissolve a desegregation order is determining whether the school district has "complied in good faith with the desegregation decree since it was entered[.]" *Dowell*, 498 U.S. at 249-50.  In the next step, the court must determine whether "the vestiges of past discrimination had been eliminated to the extent practicable." *Id*. at

4

250. That determination requires a district court to "look not only at student assignments, but 'to every facet of school operations—faculty, staff, transportation, extra-curricular activities and facilities.'" *Id.* (quoting *Green v. Cnty. Sch. Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 435 (1968)) (the "*Green* factors"). The Court will address each aspect of that analysis below.

### III. DISCUSSION

#### A. Good Faith Compliance

Courts evaluate "school districts' objective compliance with the terms of their respective plans in the same fashion as [it] would evaluate compliance with the terms of any contract, simply by 'applying the terms of [the] contract between the parties to facts that have arisen since its creation.'" *Little Rock Sch. Dist. v. Arkansas*, 664 F.3d 738, 744-45 (8th Cir. 2011) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 83 F.3d 1013, 1017 (8th Cir. 1996)). "The 'good faith' aspect of compliance with a desegregation decree, however, is more specific than in contract law." *Id.* at 745. The Supreme Court of the United States in *Freeman*, described this good-faith aspect as:

> whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

*Freeman,* 503 U.S. at 491.

Junction City contends that it has been in compliance with the 1970 Order's provisions since approximately the 1971-72 school year, which required assigning students to classrooms and homerooms in a non-discriminatory basis and operating a non-discriminatory transportation system. Junction City attached two affidavits to its motion from current and former superintendents who each have worked for Junction City School District for over twenty years, Melanie Joy Mason (ECF No. 69-1 "Mason Affidavit") and William R. Lowe (ECF No. 69-2

5

"Lowe Affidavit").[2] Ms. Mason and Mr. Lowe each state their belief that Junction City has been in compliance with the requirements of the 1970 Order during the entirety of their employment. The United States agrees that Junction City has achieved compliance. ECF No. 70. The Court has previously noted Junction City's ongoing compliance with the provisions of the 1970 Order, including actions that Junction City took to maintain compliance in light of changes in Arkansas law. *See* ECF No. 47, p. 3-5. Accordingly, the Court finds that Junction City's continued compliance has demonstrated "its good-faith commitment to the whole of the [C]ourt's decree" and commitment to addressing the issues necessitating the promulgation of the 1970 Order. *Freeman,* 503 U.S. at 491. Therefore, Junction City has shown good faith compliance with the 1970 Order and the Court may now proceed to evaluating whether the "vestiges" of past discrimination have been eliminated.

### B. Vestiges of Past Discrimination

Junction City first notes that the 1970 order addressed only two of the *Green* factors: student assignments and transportation. ECF No. 69, p. 4-12. Beyond its continuing compliance with those two demands, Junction City contends that evidence relevant to the remaining *Green* factors demonstrates that past discrimination has been eliminated and that the consent decree should be dissolved. The Court will highlight the statistical evidence for each factor individually below, which was included in the Mason Affidavit and recreated in Junction City's brief. As previously noted, the United States is satisfied that the evidence underlying each factor supports dissolution of the consent decree. Also, the Lowe Affidavit broadly asserts his belief that Junction City has adhered to the student assignment and transportation requirements of the 1970 Order since the beginning of his employment with the school district in 1993.

---

[2] Ms. Mason began her employment with school district in 2000 and has been superintendent since July 1, 2022. Mr. Lowe began his employment with the school district in 1993 and served as superintendent from 2014 to 2020.

**1. Student Assignment**

Junction City first notes that the school district is separated into two grade ranges in two separate facilities: grades K-6 at the Junction City Elementary School ("Elementary School") and grades 7-12 at the Junction City High School ("High School"). At the Elementary School, Junction City notes that it enrolled 373 students for the 2023-2024 school year with a racial makeup as follows: 37% Black students, 57% white students, and 6% students of other races. Junction City further notes that all class assignments at the Elementary School are made by principal Vickie Hill, who is Black. At the High School, Junction City notes that it enrolled 326 students for the 2023-2024 school year with a racial makeup as follows: 44% Black, 53% white, and 10% other races. Student assignments at the High School are "determined by a student's assignment to advanced placement or regular classes" and elective class assignments are "based upon students' elective selections and available space in each elective course." ECF No. 69, p. 5. Further, "[a]ll homeroom classrooms are desegregated, and assignments to both homerooms and individual classes are made on a non-discriminatory basis." *Id*.

**2. Transportation**

Junction City first notes that "[s]ince at least 2000, students have been assigned to bus routes based on the geographical location of the students' homes and school bus capacity." *Id*. at p. 8. Junction City then notes that 5 of its bus drivers are white and 7 are Black. Junction City also states that it recently adopted software called "RouteABus," which helped address what could potentially be three racially identifiable bus routes and resulted in reconfigured routes which eliminated racial identification within the routes. The racial makeup of students taking the various bus routes are as follows: 43% Black, 54% white, and 3% other race.

7

### 3. Faculty and Staff Assignment

For the 2023-2024 school year, Junction City first notes that it employed five administrators: two white males (40%), one Black female (20%), and two white females (40%). Junction City's then notes that of its 59 certified employees 15% are Black, and that of its 44 non-certified employees 25 (57%) are Black. At the Elementary School, there are 24 certified staff, of which 4 (17%) are Black, and 10 non-certified staff, of which 6 (60%) are Black. At the High School, there are 31 certified staff, of which 5 (16%) are Black, and 10 non-certified staff, of which 5 (50%) are Black. For other school district staff, 4 are certified and are all white, and 24 are non-certified, of which 14 (58%) are Black.

### 4. Facilities

Junction City again notes that it only operates two facilities: an Elementary School serving grades K-6 and a High School serving grades 7-12. For the 2023-2024 school year, the Elementary School enrolled 373 students with a racial makeup as follows: 37% Black students, 57% white students, and 6% students of other races. As to the High School, it enrolled 326 students with a racial makeup as follows: 44% Black students, 53% white students, and 10% students of other races.

### 5. Extracurricular Activities

Junction City provides a description of the various extracurricular activities available for its students, which the Court will quote in full:

> [Junction City] offers the following athletic and extracurricular activities for students in grades 7- 12: band, baseball, basketball, Beta club, cheerleading, cross country, e-sports, football, Future Business Leaders of America, Future Family, Career, and Community Leaders of America, Future Farmers of America, golf, National Honor Society, science club, softball, Spanish club, student council, track, and weightlifting. Participation in these activities is determined by the number of students interested and, where applicable, eligibility as determined by the Arkansas Activities Association. Race is not a factor in the selection processes. For athletics,

> the number of students allowed to participate will only be limited if the number of interested students exceeds the number of available jerseys; in that case, tryouts would be held and the coach would pick the team members based upon talent. Cheerleading tryouts are held and a score minimum is set in advance; every student who receives the minimum score or higher makes the cheerleading squad. Any student who signs up for band class becomes a member of the band. JCSD applies the membership criteria set by the national Beta Club and National Honor Society in selecting students for those clubs. The [Junction City] homecoming court is selected by student vote.

ECF No. 69, p. 12 (citing Mason Affidavit, ¶ 23).

Upon reviewing the information provided above relevant to each of the *Green* factors and noting the United States' satisfaction[3] that Junction City has complied with all aspects of the consent decree's desegregation obligations, the Court finds that Junction City has sufficiently shown that it has obtained full compliance with the 1970 Order and that "the vestiges of past discrimination had been eliminated to the extent practicable." *Dowell*, 498 U.S. at 250. Accordingly, Junction City's full compliance permits the Court to declare the school district unitary and relinquish its continuing jurisdiction to oversee compliance with the 1970 Order. *See Smith*, 769 F.3d at 572.

---

[3] The lack of any opposition to the request for unitary status after decades under an enforceable consent decree provides greater weight in favor of granting the instant motion. *See Little Rock Sch. Dist. v. Pulaski Cnty. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that a settlement agreed upon by all parties in ongoing desegregation litigation should be given "significant weight" when determining whether to approve the requested settlement); *and see Robinson v. Shelby Cnty. Bd. Of Educ.*, 566 F.3d 642, 650 (6th Cir. 2009) (stating that a court "must afford considerable weight" to a joint motion filed by all parties in a long-running desegregation matter) (citation omitted).

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant Junction City's Motion for Declaration of Unitary Status (ECF No. 68) should be and hereby is **GRANTED**. Junction City School District is hereby declared to be unitary and this case is hereby **DISMISSED WITH PREJUDICE** as to all parties and claims.[4]

**IT IS SO ORDERED**, this 19th day of July, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[4] This Order shall also apply to *Love, et al. v. Bd. of Ed. of Junction City School District No. 75, et al.*, Case No. ED-70-C-51, U.S. Dist. Ct., W.D. Ark. In its prior dismissal of the *Love* case, the Court stated that it would retain jurisdiction over the instant matter to address questions under either proceeding. ECF No. 2-8. Accordingly, the *Love* case is similarly **DISMISSED WITH PREJUDICE** as to all parties and claims.